**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re

RICHMOND GARDEN VIEWS, LLC

                              Debtor.
-----------------------------------------------------------------x
HOWARD P. MAGALIFF, as Trustee of
Richmond Garden Views, LLC,


                              Plaintiff,

            vs.

AMY DAVIDOFF and TIMOTHY SULLIVAN
ESTATE, INC.,

                              Defendants.
-----------------------------------------------------------------x

Chapter 7

Case No. 23-22381 (SHL)


Adv. Pro. No. 23-07025 (SHL)

<u>**MEMORANDUM OF DECISION**</u>

**A P P E A R A N C E S :**

**R3M LAW, LLP**
*Attorneys for Howard P. Magaliff, Chapter 7 Trustee*
335 Madison Avenue, 9th Floor
New York, NY 10017
By:    Howard P. Magaliff, Esq.
         William C. Buzzini, Esq.

**BOCHNER PLLC**
*Attorneys for Timothy Sullivan Estate, Inc.*
1040 Avenue of the Americas, 15th Fl.
New York, New York 10018
By:    Jeremy M. Doberman, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are cross-motions for summary judgement in an adversary proceeding brought by Howard P. Magaliff (the "Trustee"), as trustee of the estate of Richmond Garden Views, LLC (the "Debtor"), against Amy Davidoff (the "Referee"), as the court-appointed referee in a state court foreclosure action and Timothy Sullivan Estate, Inc. ("TSE"). *See* Trustee's Motion for Summary Judgment [ECF No. 11] ("Trustee MSJ); Defendant Timothy Sullivan Estate, Inc.'s Opposition to Plaintiff Motion for Summary Judgment and Cross-Motion for Summary Judgment [ECF No. 12] ("TSE Cross-Motion").[1]  The dispute here is over who owns a deposit made by the Debtor to purchase property where the Debtor ultimately defaulted on the purchase.  The Trustee seeks summary judgment on both claims asserted in the Complaint for Declaratory Judgment and Turnover Pursuant to 11 U.S.C. § 543(b)(1) ¶ 1 [ECF No. 1] ("Compl."), which include a claim for declaratory relief that TSE has no interest in the deposit and a second claim directing the Referee to turn over that deposit to the Trustee.  *See generally*, Compl.  The TSE Cross Motion seeks dismissal of the Complaint and a declaratory judgment that TSE is entitled to the deposit paid by the Debtor.  *See* Answer, Counterclaim, and Cross-Claim [ECF No. 6]; TSE Cross-Motion.  While the Referee filed a notice of appearance in this case, *see* ECF No. 4, the Referee did not respond to the Complaint or the cross-motions, which is

---

[1]      Unless otherwise specified, references to the Case Management/Electronic Case Filing ("ECF") docket are to Adv. Pro. No. 23-07025.

23-07025-shl   Doc 17   Filed 10/09/24   Entered 10/09/24 16:21:54   Main Document
Pg 3 of 13

unsurprising given that no party contends that the Referee is entitled to the deposit.  For the

reasons set forth below, the Trustee MSJ is denied, and the TSE Cross-Motion is granted.

## <u>BACKGROUND</u>

In March 2022, the Supreme Court of the State of New York for the County of Sullivan

entered a judgment in the matter of *Timothy Sullivan Estate v. Godfrey Rose*, Sup. Ct. Sullivan

Cty., Index No. E2021/219 (the "State Court Action").  *See* Joint Statement of Undisputed

Material Facts  [ECF No. 11-1] ¶ 2 ("Joint Statement of Facts").  The State Court Action was

brought by TSE, the mortgagee, against third party Godfrey Rose LLC (the "Mortgagor") to

foreclose on real property known as Section 118.A, Block 1, Lot 3.1 and Section 132, Block 1,

Lot 1 (the "Property").  *Id.*  Judgment was awarded to TSE in the State Court Action.  *Id.*  Under

the terms of the judgment in the State Court Action, proceeds of the sale would be transferred to

TSE, as judgment creditor, and applied to the outstanding balance owed to TSE by the

Mortgagor.  *Id.*  The foreclosure auction occurred on April 18, 2023 and the Debtor submitted

the highest bid on the foreclosure sale.  *See id.* ¶ 4.  After the auction, the Debtor and the Referee

entered into a foreclosure purchase and sale agreement (the "PSA") for the purchase of the

Property.  *Id.*; *see also* Joint Statement of Facts, Ex. 1.  As required by the PSA, the Debtor paid

to the referee $140,010 (the "Deposit"), which was 10% of the total purchase price.  *See* Joint

Statement of Facts ¶¶ 4–5.  The PSA included a "time is of the essence" clause, and the required

Debtor to pay the remaining amounts owed on the purchase price by May 18, 2023 at 11:00 a.m.

(the "Closing Date").  PSA ¶ 2.  In the event that the Debtor failed to perform under terms of

sale, the PSA provided that the Debtor would relinquish its future rights to "any monies,"

including the Deposit, and the Deposit would paid from the Referee to TSE and applied to the

balance of the obligation that the Mortgagor owed to TSE.  PSA, ¶ 8.  The PSA also provided

that if the Debtor failed to comply with any of the terms of sale, the Referee would again list the Property for sale, and the Debtor would be liable for any deficiency between the purchase price on the sale to the Debtor and the new purchase price in the subsequent sale, as well as any costs or expenses incurred by the Referee.  PSA ¶ 7.  The PSA also prohibited the Debtor from assigning its rights to a third party without TSE's consent.  *See* PSA ¶ 15; Joint Statement of Facts ¶ 8.

The Debtor failed to consummate the purchase of the Property by the Closing Date.  *See* Joint Statement of Facts ¶ 10.  On May 17, 2023 the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code and the Trustee was appointed as interim trustee under Section 702(d) of the Bankruptcy Code.  *See id.* ¶ 1; *see also* ECF Nos. 1, 2, Case No. 23-22381. After the filing of the bankruptcy, the Trustee notified both TSE and the Referee of the Debtor's Chapter 7 filing and asserted that the Referee should turn over the Deposit to the Trustee.  *Id.* ¶ 12.  In response, TSE contended that the Deposit belongs to TSE as the mortgagee under the terms of the PSA.  *See id.*  In response, the Referee stated that the Deposit was in her escrow account, but that she would not disburse the funds absent a court order.  *Id.* ¶ 13.  This adversary proceeding followed.

## DISCUSSION

### I.      Legal Standard

Summary judgment should not be granted unless the movant has met the burden of showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the role of a court is not to decide the issue on the merits, but rather identify whether there are any genuine issues of material fact, such that a reasonable juror could find for the non-

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, courts must determine whether the showing made by respondent in opposition to the motion, if reduced to admissible evidence, would be sufficient to carry the respondent's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A court must resolve any ambiguities and draw inferences in favor of the non-moving party. *See Tolan v. Cotton,* 572 U.S. 650, 657 (2014). Once the moving party has demonstrated its *prima facie* entitlement to judgment, the burden shifts to the non-moving party to show something beyond a "metaphysical doubt" as to the existence of material factual disputes to survive a motion for summary judgement. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The legal standard for a cross motion is the same as individual motions, where a "court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *United Indus. Corp. v. IFTE plc*, 293 F. Supp. 2d 296, 299 (S.D.N.Y. 2003) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). The court must analyze each motion separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Consol. Edison Co., v. Ace Am. Ins. Co.*, 673 F. Supp. 3d 475, 485 (S.D.N.Y 2023) (quoting *Peterson v. Kolodin*, 2013 WL 5226114, at *1 (S.D.N.Y. Sept. 10, 2013)).

## II.    Analysis

The issue before the Court is which party is entitled to the Deposit: TSE or the Trustee. For the reasons to be discussed, the Court concludes that TSE rightfully retains interest in the Deposit under the terms of the PSA, and that the Deposit is not part of the Debtor's estate. The Trustee advances several arguments in support of his claim to the Deposit. First, the Trustee argues that the provision in the PSA allowing TSE to retain the Deposit cannot be a permissible

5

liquidated damages clause because it would be an improper penalty here. Trustee MSJ at 5-9.
The Trustee also argues the liquidated damages clause here is impermissible because the PSA
allows TSE to seek actual damages in addition to retaining the Deposit. *Id.* at 9-10. Finally, the
Trustee asserts that, regardless of whether the liquidated damages provision is enforceable, the
Debtor has a superior right to the Deposit over TSE. *Id.* at 10-11. The Court addresses each
argument in turn.

> A. *Whether the Liquidated Damages Provision Is Valid and Enforceable.*

Under New York law, "a contractually agreed upon sum for liquidated damages will be
sustained where (1) actual damages may be difficult to determine and (2) the sum stipulated is
not plainly disproportionate to the possible loss." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs.
Co*., 369 F.3d 34, 70 (2d Cir. 2004) (quoting *United Merchants & Mfrs. v. Equitable Life
Assurance Soc'y (In re United Merchants & Mfrs., Inc.)*, 674 F.2d 134, 142 (2d Cir. 1982)). But
while "parties to a contract have the right to agree to [liquidated damages] clauses," such a
clause must not be either unconscionable or contrary to public policy. *Bristol Inv. Fund v.
Carnegie Int'l Corp*., 310 F. Supp. 2d 556, 566 (S.D.N.Y 2003) (citing *Truck Rent–A–Center,
Inc. v. Puritan Farms 2nd, Inc*., 41 N.Y.2d 420, 424 (1977)). A liquidated damages clause is
contrary to public policy if it "impose[s] a penalty on the breaching party by requiring payment
of a sum of money 'grossly disproportionate to the amount of actual damages'" rather than
compensating the aggrieved party. *Hanover Direct v. T.R. Acquisition Corp. (In re T.R.
Acquisition Corp.)*, 309 B.R. 830, 837 (S.D.N.Y. 2003) (quoting *Truck Rent-A-Center*, 41
N.Y.2d at 424)). Thus, a liquidated damages clause is an impermissible penalty if the damages
resulting from breach of contract can be easily calculated or if the amount fixed is "plainly
disproportionate to the contemplated injury." *U.S. Fid. & Guar. Co.*, 369 F.3d at 71. The party

6

seeking to nullify liquidated damages bears the burden of demonstrating that such damages are a penalty. *See In re Republic Airways Holding*, 565 B.R. 710, 725 (Bankr. S.D.N.Y. 2017) (citing *JMD Holding Corp. v. Cong. Fin. Corp.*, 4 N.Y.3d 373, 380 (2005)). "Whether a liquidated damages provision is enforceable 'is a question of law, giving due consideration to the nature of the contract and the circumstances.'" *Paguirigan v. Prompt Nursing Emp. Agency, LLC*, 827 F. App'x 116, 119 (2d Cir. 2020) (summary order) (quoting *JMD Holding Corp.* 4 N.Y.3d at 379).

Under New York law, it is well settled that retention of a down payment in a failed real estate transaction may be a reasonable and enforceable liquidated damages provision. *See Maxton Builders, Inc. v. Lo Galbo,* 68 N.Y.2d 373, 378 (1986) ("For more than a century it has been well settled in this State that a vendee who defaults on a real estate contract without lawful excuse, cannot recover the down payment.") (internal citations omitted); *see also Micciche v. Homes by Timbers, Inc*., 18 A.D.3d 833, 834, (App. Div. 2d Dep't 2005); *Rivera v. Konkol*, 48 A.D.3d 347, 348 (App. Div. 1st Dep't 2008). Moreover, there is a "general acceptance of the traditional 10% down payment as a reasonable amount" of liquidated damages. *Maxton*, 68 N.Y.2d at 382; *see also Chateau D'If Corp. v. City of New York*, 219 A.D.2d 205 (App. Div. 1st Dep't 1996) (upholding a liquid damages clause that provided for the retention of a 10% down payment); *Barton v. Lerman*, 233 A.D.2d 555 (App. Div. 3d Dep't 1996) (same).

Indeed, even liquidated damages clauses involving retention of deposits of more than 10% have been upheld as reasonable and not punitive. *See, e.g., Uzan v. 845 UN Ltd. P'ship*, 10 A.D.3d 230, 235 (App. Div. 1st Dep't 2004) (noting that "the record evidences that it is customary in the pre-construction luxury condominium industry for parties to price the risk of default at 25% of the purchase price."); *Vitolo v. O'Connor*, 223 A.D.2d 762, 764-65 (App. Div. 3d Dep't 1996) (allowing retention of a down payment equal to nearly 23% of the purchase

price); *Badame v. Bock Enterprises, Inc.*, 190 A.D.2d 1066, 1066 (App. Div. 4th Dep't 1993) (holding that the lower court erred in limited damages to 10% of the purchase price). As one court noted, "[e]xcept in cases where there is a real risk of overreaching, there should be no need for the courts to relieve the parties of the consequences of their contract. If the parties are dissatisfied with the rule [allowing for retention of the down payment], the time to say so is at the bargaining table." *Chateau D'If*, 219 A.D.2d at 208 (quoting *Maxton*, 68 N.Y.2d. at 382). So while the Trustee here argues that the Deposit "is not remotely proportional to the probable loss [that] TSE would incur," *see* Trustee MSJ at 9, his position flies in the face of well established authority as well as common practice in New York real estate transactions. The Trustee's specific reliance on *Burns v. Reiser Bros.*, 173 A.D.3d 1314 (App. Div. 3d. Dep't 2019) in support of his position fails. The *Burns* court held that retaining 69% of the total contract price was improper because it was "on its face [ ] disproportionally higher than the actual damages." *Id.* at 1317. No such situation exists here. The ten percent at issue here is recognized by New York courts as well within the permissible range and the Trustee cites no case that holds otherwise.[2]

The Trustee also argues that the liquidated damages clause is unenforceable because TSE's costs had already accrued and were ascertainable prior to the execution of the PSA. *See Trustee's Reply to Defendant Timothy Sullivan Estate Inc.'s Opposition to Trustee's Motion for Summary Judgment and Opposition to Cross-Motion for Summary Judgment* [ECF No. 13] at 6 ("Trustee's Reply"). In support of this argument, the Trustee relies on *Paguirigan*, 827 F. App'x

---

[2]     The Trustee's repeated citations to the *Burns* case is troubling given that *Burns* presents extremely different circumstances than the facts here and given the Trustee's failure to acknowledge that retention of a 10% deposit is widely accepted by the New York State courts for real estate sales contracts.

116, which stated that, in that case, "[the damages] had already been incurred by the time the parties signed the contract" and that "courts consider the facts as they existed at the time [the parties] enter[ed] into their agreement." *Paguirigan,* 827 F. App'x at 119, 121 (internal citations and quotations omitted). But once again, the Trustee's reliance on this authority is misplaced. As a threshold matter, *Pagiurigan* is a summary order and not entitled to any precedential value, a fact that the Trustee neglected to indicate in his papers. In any event, the facts in the cited case are once again easily distinguishable from the instant action. In *Paguirigan*, the Court found that the damages that an employer would have incurred if its employees prematurely left their position, including costs for training and housing, were ascertainable and could be determined at the time the contract was signed. *Id.* at 119-21. Unlike in *Paguirigan*, TSE's damages had not already been incurred by the time the parties signed the PSA but could only be ascertained if the Debtor defaulted on its obligations under the PSA and the Referee then re-marketed the property, leading to an eventual new sale.

The Trustee also argues that because the PSA provides for TSE to retain the Deposit in the event of any contractual breach—even a *de minimis* breach—the PSA is punitive. *See* Trustee's Reply at 8-9. In support of this argument, the Trustee again relies on a generic statement of law that "[i]t is well settled in New York that a clause . . . providing for the [fixed] payment . . . upon a breach of any provision . . . no matter how trivial the breach, cannot be sustained as a liquidated damages provision since it does not represent an estimate of prospective actual damages." *See* Trustee's Reply at 8 (citing *John T. Brady v. Form-Eze Sys.*, 623 F.2d 261, 263 (2d Cir. 1980)). But again, this argument ignores the actual facts of this case. The Debtor's default here—namely, the failure to timely close and failure to pay—is not a *de minimis* breach. Rather, the Debtor failed to perform the most material term of the contract: consummation of the

sale.  Indeed, the PSA specifically provides that failure to complete the purchase constitutes a

default.  *See* PSA ¶ 3.

Finally, the Trustee resorts to arguments about contract interpretation, arguing that "any

doubt with respect to whether the relevant provision is an unenforceable penalty or a permissible

liquidated damages clause should be resolved in favor of a construction which holds that the

provision is a penalty."  *See* Trustee's Reply at 9-10 (citing *Bristol Inv. Fund*, 310 F. Supp. 2d at

566).  But as the party seeking to nullify the liquidated damages clause, the Trustee bears the

burden of demonstrating that such damages are a penalty.  *See Republic Airways Holding*, 565

B.R. at 725.  Based on the undisputed facts here and interpreting the language of the PSA, it is

clear that TSE is entitled to summary judgment.  *See, e.g., Maxton*, 68 N.Y.2d at 382 (affirming

the grant of summary judgment to the movant who sought to retain deposit on a real estate

contract as liquidated damages); *Micciche*, 18 A.D.3d 833 (same).

### B.  Whether TSE Is Violating the Exclusive Remedy Rule

The Trustee argues that the damages provision here is unenforceable because it allows for

both liquidated and actual damages.  *See* Trustee MSJ at 9–10.  The Trustee recites a principle of

law that "a party cannot be entitled to both liquidated damages and actual damage remedies."

*See* Trustee MSJ at 9 (quoting *U.S. Fid. & Guar. Co.*, 369 F.3d at 71).  The Trustee further

argues that "the PSA holds the Debtor liable for any deficiency between the original purchase

price plus costs and expenses of reselling the Property and the purchase price on the resale . . .

[in addition to] awarding TSE liquidated 'damages'" and it therefore violates the "Exclusive

Remedy" rule.  *See* Trustee's Reply at 5–6; *see also Agerbrink v. Model Serv. LLC,* 196 F. Supp.

3d 412, 418 (S.D.N.Y. 2016) ("[L]iquidated damages and actual damages are mutually exclusive

remedies under New York law.") (internal citation omitted).

But once again, the Court disagrees.  As is made clear by TSE's claim and TSE's comments at oral argument, TSE is not claiming both liquidated damages and actual damages. *See* Claim No. 1 [Case No. 23-22381, ECF No. 1-2] (the "Proof of Claim") (indicating that TSE only seeks to recover $140,010.00, the amount of the Deposit).  Nor can TSE seek both forms of damages in this case in the future.  *See* Notice of Possible Payments of Dividends and of Last Date to File Claims [Case No. 23-22381, ECF No. 7] (setting September 25, 2023 as the last date to file a proof of claim); *see also* 11 U.S.C. § 502(b)(9) (disallowing claims filed after the bar date).  With TSE having only timely filed a proof of claim for the amount of the Deposit and opting exclusively for this one form of remedy, TSE is not violating the Exclusive Remedy rule. *See Jefferies LLC v. Gegenheimer*, 2020 U.S. Dist. LEXIS 106588, at *13-14 (S.D.N.Y. June 17, 2020) (holding that the Exclusive Remedy rule is not violated when only liquidated damages are awarded even when a contract provides for both liquidated and actual damages).[3]

### C. Whether the Deposit Belongs to the Debtor's Estate

Irrespective of the enforceability of the liquidated damages clause, the Trustee also asserts that the Deposit belongs to the Debtor's estate because TSE did not acquire any rights in the escrow amount.  *See* Trustee MSJ at 10–11.  More specifically, the Trustee argues that that the transfer of the Deposit to TSE constitutes an "impermissible forfeiture," and accordingly, the funds revert to the Debtor and are part of the Debtor's estate.  *See* Trustee MSJ at 11.  But once again, the Trustee misses the mark for a variety of reasons.

The Trustee's position appears to be premised on a finding that the liquidated damages clause is unenforceable, a position the Court has already rejected.  The Trustee also

---

[3]     Having found that the liquidated damages provision is enforceable and there is no violation of the Exclusive Remedy rule, the Court need not address TSE's arguments concerning the various types of damages that may be incurred here.  *See* TSE Cross-Motion ¶¶ 24-25.

misunderstands the operation of the escrow here, citing the rule that "upon full performance of the conditions according to the escrow agreement title will vest at once in [the grantee]."  Trustee MSJ at 10 (quoting *Matter of O.P.M. Leasing Servs., Inc.*, 46 B.R. 661, 667 (Bankr. S.D.N.Y. 1985)).  But the only condition under which the Debtor would be able to retain the Deposit under the PSA is if the Referee were unable to convey the title to the Debtor for any reason other than the Debtor's default.  *See* PSA ¶ 9.  This did not occur here.  The operation of this escrow is consistent with the general rules for escrow accounts in New York, which provide that "for an escrow to be valid[,] the delivery of the property must be irrevocable.  Although the grantor retains a contingent right to repossess the property if the specified condition does not occur . . . it must be beyond the possession and control of the grantor . . . .  For these reasons, [c]ourts of bankruptcy recognize that money held in escrow is not property which vests in the trustee in bankruptcy."  *O.P.M. Leasing Servs.,* 46 B.R. at 667–68 (internal citation and quotations omitted).  In other words, "[i]t  does not follow . . . that if the liquidated damages clause is unenforceable the down payment must be returned.  The invalidity of the liquidated damages clause cannot create for the defaulting contract vendee a right—the return of its deposit—which the law does not recognize."  *Chateau D'If*, 219 A.D.2d at 209.  Indeed, the Trustee's position flies in the face of the well settled rule that "[a] vendee who defaults on a real estate contract without lawful excuse, cannot recover the down payment."  *Maxton,* 68 N.Y.2d at 378.  Indeed, the terms of the PSA are clear that, if the Debtor defaulted on the sale, "the Referee is directed to tender the [Deposit] to [TSE] within seven (7) days of the date of [Debtor's] default."  PSA ¶ 8.

Thus, under the PSA, the Debtor has "no further rights to any monies," including the Deposit, in the event the Debtor defaulted.  PSA ¶ 8.[4]

### CONCLUSION

For the reasons stated above, the Trustee MSJ is denied, and the TSE Cross-Motion is granted.  TSE should settle an order on five days' notice.  The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice.  A copy of the notice and proposed order shall also be served upon the Trustee.

Dated: White Plains, New York
       October 9, 2024

_____*/s/ Sean H. Lane*_____
UNITED STATES BANKRUPTCY JUDGE

---

[4]      The Trustee here is asking the Court to invalidate the terms of a foreclosure sale conducted under the purview of the New York State courts and a New York State court receiver.  But the Trustee's counsel was unable to tell the Court whether the Trustee's requested relief would do violence to routine real estate foreclosure proceedings and practices in the New York State courts.  And as the Court noted at oral argument, sale orders here in the Bankruptcy Court—including ones conducted by Chapter 7 trustees—often require the purchaser to provide a deposit of 10% of the purchase price and include a provision that the purchaser will default on such a deposit if the purchaser fails to close on the sale.  At oral argument, Trustee's counsel had no insight as to how its requested relief here would impact such bankruptcy sales.